No. 7633.

STATE EX REL. BOARD OF SCHOOL DIRECTORS OF THE PARISH OF TENSAS VS.
ALLEN JUMEL, AUDITOR.

The Auditor of the State can not be compelled by a mandamus to levy a certain tax, even
    though an act of the Legislature has made it his express duty to do so, when it appears
    that his doing so would be in disregard of a final decision of the Supreme Court pro-
    nouncing the act to be unconstitutional and in direct contravention of a subsequent act
    of the Legislature.

A PPEAL from the Third District Court, parish of Orleans.    *Monroe,*
    J.
    *E. Howard Farrar* for relators and intervenors, appellees.
    *H. N. Ogden*, Attorney-General, for defendant and appellant.

———

E. H. Farrar, for relators and intervenors, appellees, contended:

First—Art. 834 of the Code of Practice declares that the writ " may be
    directed to public officers to compel them to fulfil *any* of the *duties*
    attached to their office, or which may be legally required of them."
    See, also, High on Extraordinary Remedies, chap. 2, subdivision
    vii. and ix. ; Moses on Mandamus, chap. xi. p. 84.

Second—The State, which was not a party on the record below, intervened
    after judgment and took this appeal.  The Auditor did not appeal.
    In this court the State attempts to raise in argument the constitu-
    tionality of the law upon which the proceeding is based.  The Auditor
    did not raise such a question in his pleadings; the State has filed no
    assignment of errors here.  This was the only possible way that an
    error of law appearing on the face of the record could be urged in
    this court.

Third—The unconstitutionality of a law cannot be urged under the plea
    of the general issue.  Such a defense is strictly special, and the
    party who urges it must make it out beyond question.  2 Overton,
    168.

Fourth—The State is estopped from setting up the unconstitutionality
    of Act No. 81 of 1872.  Bigelow on Estoppel, p. 276; Hermann, sec.
    219; 3 Pickering 224; 4 Peters 187; 4 Benn. 231; 7 Cal. 527; 22 Ala.
    699; 13 An. 302; 3 Marsh 515; 5 Bush (Ky.) 230; Cooley, p. 215; 25 An.
    68; 28 An. 462.

H. N. Ogden, Attorney-General, contra, contended:

That Act 81 of the year 1872, having been declared unconstitutional by
    a final decree of the Supreme Court, the Auditor could not be com-
    pelled by a writ of mandamus to carry out any of its provisions.

State ex rel. Board of School Directors of the Parish of Tensas vs. Jumel, Auditor.

The opinion of the court was delivered by

DeBlanc, J. In 1843, the Congress of the United States authorized the Legislature of Louisiana to provide—by law—for the sale of the lands which, previously, had been reserved and appropriated for the use of schools, and to invest—in some *productive fund*—the price of the authorized sale.

In pursuance of that Congressional enactment, the Legislature of Louisiana created and organized the free-school fund, and directed the issuance of State bonds, for an amount equal to that of its indebtedness to that fund, the assets of which—according to legislative and constitutional provisions—were to be perpetually held in trust, and never diverted to any other purpose than that for which the lands had originally been reserved and appropriated.

In 1872, the Legislature—disregarding those constitutional and legislative provisions—abolished the free-school fund, ordered the sale of the State bonds belonging to it, and directed a flagrant diversion of its assets.

The bonds were sold, the proceeds of the sale misapplied, and the schools divested of a fund which had thrice been declared inviolable. In order to palliate what we have already denounced, and still consider as an act of spoliation, the Legislature by which it was perpetrated, evinced, and—it may be—feigned—by an usual enactment—an intention to retrieve a manifest iniquity, and to repair the injury which—otherwise—was to result therefrom.

That enactment is as follows: "It is hereby made the duty of the Auditor of Public Accounts *to ascertain* annually the aggregate amount which *would be* due the several parishes, from the free-school fund, *if* it were retained in the form in which it was prior to the passage of this act, and to levy and collect a special tax to provide for the payment of the same to the several parishes, when due—as if the free-school fund had not been abolished."

Third section, Act No. 81, of 1872, p. 135.

Is the duty thus imposed a purely ministerial duty, unconnected with the exercise of any discretion?

The Auditor is the head of one of the executive departments of the government, and—as such—the general accountant of the State. That he may be compelled, by mandamus, to perform a peremptory and absolute duty, there can be no doubt—but there is as little doubt that, by the very nature of his functions, he is often required to exercise discretion. In this instance, and under the power delegated to him by the statute of 1872, what is he commanded to do?

1st. To ascertain annually the aggregate amount which would be

due the several parishes, from the free-school fund, if it had not been abolished; and

2d. To levy and collect a special tax to pay to the parishes that aggregate amount, as if that fund had not been abolished.

When the relator's application was filed, the Auditor had, staring him in the face, Act No. 8 of the Legislature of 1878, fixing at thirteen mills on the dollar, the annual *ad valorem* tax levied for the purpose of supporting the government, to pay the public debt, and repealing all parts of laws in conflict with its provisions. He had too the decision in "Durant vs. the Board of Liquidation," in which we held "that the statute relied upon by the relators violated the faith of the State, the conditions of the Congressional bounty, the legislation by which it was carried into effect, and the constitution of Louisiana—that the State could not, at its pleasure, abolish the obligations created by the act of Congress, ratified by its own legislation, and that the injunction to the Auditor to levy and collect a tax to pay interest on the diverted fund, was not a compliance with the Congressional act."

To do, as the Legislature commanded, the Auditor would have to disregard that decision, to assume that it is erroneous and the law constitutional, and to levy—under the act of 1872—a tax which, necessarily, would have increased and exceeded the rate of taxation fixed by that of 1878. His obedience to the first, the invalidity of which had been judicially pronounced, would have amounted to a disobedience of the latter. He had to select between a condemned statute, and the decision by which it had been condemned.

Pretermitting any discussion as to the constitutionality or unconstitutionality of the act of 1872, or any of its sections—pretermitting any opinion as to whether the act of 1878 was or was not an insuperable impediment to the levy and collection of the tax herein referred to—pretermitting any adhesion to the views expressed in the Durant case—they, that law and that decision, stood—at the date of the relator's application—unrepealed and unreversed, and—by that law—the rate of taxation was limited to thirteen mills, and—by that decision—the act of 1872, a compliance with which would have increased that rate, had been pronounced unconstitutional.

Were we to hold that the Auditor should have disregarded our construction of the statute of 1872, and disregarded a law, which—apparently at least—was an obstacle to the execution of that under which we are asked to compel him to proceed, would it—on our part—be less than an acknowledgment that he is not to be guided by our adjudications, and that he is bound to comply with the provisions of an enactment, which—according to our own decision—has never legally existed?

Placed—as he was—between the law, which commanded the per-

formance of an important task, and the judicial construction which negatived the very existence of that law, the Auditor—guided by that construction—refused to perform the required task. He had to pause, to reflect, to consider, to compare, to choose; and this plainly shows that he was not called upon to discharge a purely ministerial and incontestable duty, or to execute an evidently constitutional and valid enactment.

The claim on which the relators have based their action, is a just and a sacred claim, one due by the State to her own people, one which could not—honorably—be ignored or repudiated, and which—it seems—could be successfully urged in a memorial to the General Assembly, to the immediate representatives of the creditors of that diverted fund. To them and them alone, those creditors can look for another, a proper enactment, which would effectually compensate the loss which they have sustained. Here, they cannot be relieved; for it is now settled that "the writ of mandamus will not issue, in any event, to compel a ministerial officer to perform a duty required of him by a statute which was declared void." High, Ext. Rem. p. 77, No. 96.

In " McCurdy vs. Tappan," the Supreme Court of Wisconsin said : "The only remaining point argued by counsel for the relator, which requires particular notice is that, conceding the act of 1869 to be void, still the town clerk, who is a mere ministerial officer, had no power to pass upon its validity, and that it was his duty to levy the tax to pay the award, unless restrained at the suit of some person competent to raise the question of validity. We do not think that position tenable. The act being void, it binds no one, and any person may assert its true character and refuse to obey it. Besides"—the court added—"there can be no doubt that the taxpayers of the town could have maintained an action to enjoin the levy of the tax, and the town clerk, by refusing to levy the same, acted—in a certain sense—as their representative."

29 Wisconsin, p. 686.

It has been held that a law, and even one of the sections of a law, may contain provisions which are, and others which are not constitutional, but this happens when those provisions are " perfectly distinct and separable, so that one may stand though the others fall."

5th Gray's Reports, 485.

It would be, as justly remarked by Mr. Cooley, " inconsistent with all the principles of constitutional law to adjudge that enactments are void, because they are associated in the same act, though not connected with or dependent on others which are unconstitutional"—and he adds: " Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, *unless* all the provisions are connected in subject-matter, depending on each other,

operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the Legislature would have passed the one without the other."

Cooley's Const. Lim., 3d ed. p. 177.

"And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them."

Cooley's Const. Lim., 3d ed. pp. 178 and 179.

The third section of the act of 1872 embraces three germane clauses enacted but for one purpose : to reach the free-school fund and dispose of the same. By the first, that fund was abolished—as a compensation for the injury inflicted by the first, the second ordered the levy of a tax, and the last, without which the others would not have been thought of and enacted, transferred to a fund created by said act, whatever then belonged to that which had been abolished.

The unlawful purpose which produced two of those clauses, is the unlawful tie by which they are all linked the one to the other, and—that tie unfastened—they must share a common destiny, and fall as they were conceived and enacted—together.

Were we to prop with technicalities the too isolated fraction of an entirely tainted statute, we would—by as timid as useless a decision—but postpone a general attack, by the taxpayers, on that indefensible fraction, and hundred of controversies would inevitably retard a restitution which, otherwise, may soon be demanded, and granted as soon as demanded.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from is annulled, avoided and reversed, and the relators' application and intervention discharged at their costs in both courts.

Rehearing refused.

---

### DISSENTING OPINION.

WHITE, J. I dissented from the conclusion of the court in this case, but further reflection has caused me to conclude that I should have given my adhesion to the opinion and decree. The difficulty in my mind lay beyond the Durant and Sun Mutual Insurance Company cases —was engendered by a doubt as to the correctness of the rulings there made, but, as I now think, these doubts should not have influenced me, under the rule of *stare decisis.* I put of record not the reasons for my dissent, but my adhesion to the decree of the court.